UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAYLA FLINCHBAUGH o/b/o E.B.,

    Plaintiff,

v.                                                                              Case No. 8:23-cv-464-CPT

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff, proceeding on behalf of her minor child, E.B., seeks judicial review of the Commissioner's decision denying E.B.'s claim for Supplemental Security Income (SSI). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

In June 2017, the Social Security Administration (SSA) found E.B. to be disabled based on a medically determinable impairment relating to E.B.'s speech, language, and developmental delay prior to age one. (R. 58–61). In a subsequent

---

[1] Mr. O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted for the former Acting Commissioner, Kilolo Kijakazi, as the Defendant in this suit.

decision issued in November 2020, however, the SSA concluded as part of its continuing disability review process that E.B. was no longer disabled. (R. 58). This assessment was upheld on reconsideration. *Id.* At the Plaintiff's request, an ALJ thereafter conducted a hearing on the matter in March 2022. *Id.* The Plaintiff was accompanied by an attorney at that hearing and testified on behalf of E.B. (R. 88–109). E.B., who was six years old at the time, did not attend the proceeding. *Id.*

In a decision issued in June 2022, the ALJ determined, *inter alia*, that (1) the most recent favorable medical decision finding E.B. to be disabled—known as the Comparative Point Decision (CPD)—was the one from June 2017; (2) E.B. experienced "medical improvement" as of November 2020; (3) since that date, the impairments E.B. had at the time of the CPD did not functionally equal any of the listings of impairments (listings);[2] (4) E.B. had the severe impairments of asthma and attention deficit hyperactivity disorder beginning in November 2020; and (5) E.B did not, however, have an impairment or combination of impairments that met, or medically or functionally equaled, one of the listings. (R. 58–87). In light of these assessments, the ALJ concluded that E.B.'s disability ended as of November 2020. *Id.*

The Appeals Council denied the Plaintiff's request for review. (R. 2–8). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 416.924(d), 416.926(a).

II.

To be considered disabled, an SSI claimant under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* 20 C.F.R. § 416.906.[3]  In evaluating a disability claim brought on behalf of a minor, the ALJ must conduct a three-step inquiry. *T.R.C. ex rel. Boyd v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 914, 918 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. § 416.924(a)).[4]  First, the ALJ must ascertain whether the minor is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). If not, the ALJ must discern whether the minor has a severe impairment or combination of impairments. *Id.*  If so, the ALJ must then assess whether the minor's impairment or combination of impairments meets, or medically or functionally equals, a listed impairment and also satisfies a duration requirement. *Id.*

To "meet" a listing, the minor must actually suffer from the limitations specified in the listing. *Shinn o/b/o Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004). And to "medically equal" the limitations set forth in a listing, the minor's restrictions must be "at least equal in severity and duration to the criteria of [the] listed impairment." 20 C.F.R. § 416.926(a).

---

[3] Unless otherwise indicated, all citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[4] Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority. 11th Cir. R. 36-2.

If the minor's impairment does not meet or medically equal a listing, the minor may still be found to be disabled if his impairment "functionally equals" a listing. *Id.* § 416.926a(a). In deciding whether the minor's condition crosses this threshold, the ALJ must evaluate the minor's functioning in six "broad areas" that are "intended to capture all of what a [minor] can or cannot do." *Id.* § 416.926a(b)(1). These six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.*

If the minor suffers from a "marked" limitation in at least two of these domains or an "extreme" limitation in one, the minor's condition will be deemed to be functionally equivalent to a listed impairment. *Id.* § 416.926a(d). A "marked" limitation is defined as a restriction that "interferes seriously with [the minor's] ability to independently initiate, sustain, or complete activities" and that is "more than moderate but less than extreme." *Id.* § 416.926a(e)(2)(i) (internal quotation marks omitted). And an "extreme limitation" is one that "interferes very seriously with [the minor's] ability to independently initiate, sustain, or complete activities" but "does not necessarily mean a total lack or loss of [his] ability to function." *Id.* § 416.926a(e)(3)(i).

Even if a child is found to be eligible for SSI, the SSA will periodically review the case to determine whether he has made any medical improvements. *Balatbat-Light v. Comm'r of Soc. Sec.*, 2017 WL 1409739, at *2 (M.D. Fla. Apr. 20, 2017) (citation omitted). This assessment also involves a multi-step process. 20 C.F.R. § 416.994a(b). As pertinent here, the ALJ must first consider whether there has been a medical

4

improvement in the claimant's condition from the time of the CPD. *Id.* § 416.994a(b)(1). If there has been medical improvement, the ALJ must decide whether the impairment the child had at the time of the CPD still meets or equals the severity of any of the listed impairments. *Id.* § 416.994a(b)(2). If not, the ALJ must evaluate whether the claimant is currently disabled by looking at "all impairments [the claimant] now ha[s], including any [the claimant] did not have at the time of [the] most recent favorable determination or decision, or that [the ALJ] did not consider at that time." *Id.* § 416.994a(b)(3).

This final step requires the ALJ to make three separate findings—whether the child has a severe impairment or combination of impairments; if so, whether such impairments meet or medically equal the severity of any of the listed impairments; and, if the child's impairments do not meet or medically equal a listed impairment, whether the child's impairments functionally equal the listed impairments. *Id.* § 416.994a(b)(3). As to the last finding regarding functional equivalence, the ALJ assesses the same six domains utilized in the initial multi-step disability determination. *Id.* §§ 416.994a(b)(3)(iii), 416.926a.

A minor who does not prevail on his disability claim at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the proper legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation

omitted). Substantial evidence is "more than a mere scintilla" and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

The Plaintiff's two claims on appeal are that the Appeals Council erred in failing to find that supplemental materials the Plaintiff submitted after the ALJ's June 2022 decision warranted a remand and in failing to explain the basis for its determination. (Doc. 19 at 4–6). The materials at issue consist of two evaluations prepared by certain of E.B.'s teachers in November 2022 that the Appeals Council concluded did "not show a reasonable probability [of changing] the outcome of the decision." (R. 3, 17–33). Upon careful review of the parties' submissions and the record, the Court finds that the Plaintiff's claims lack merit.

A claimant may generally offer additional evidence at each stage of the SSA's administrative process, including when the claimant's disability application is before

the Appeals Council. *See Norton v. Comm'r of Soc. Sec.*, 853 F. App'x 519, 520 (11th Cir. 2021) (per curiam) (citing *Hargress*, 883 F.3d at 1308). The Appeals Council will review a case if the evidence submitted is new, material, chronologically relevant, and if "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5); *see also Chapman v. Comm'r, Soc. Sec. Admin.*, 2023 WL 8441514, at *2 (11th Cir. Dec. 5, 2023) (per curiam) (citing *Hargress*, 883 F.3d at 1309; 20 C.F.R. § 416.1470(a)(5)).

Where, as here, a claimant brings a federal action challenging the Appeals Council's consideration of supplemental evidence, a reviewing court must decide whether such evidence renders the denial of benefits improper. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). In addressing this issue, a reviewing court may assess factors that the Appeals Council did not take into account in arriving at its decision. *Pruitt v. Soc. Sec. Admin., Comm'r*, 2023 WL 196015, at *5 (11th Cir. 2023) (per curiam). If the Appeals Council wrongfully refused to consider newly tendered evidence, "it commits legal error and remand is appropriate." *Washington v. Soc. Sec. Admin, Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015).

A.

In this case, the Plaintiff asserts that, contrary to the ALJ's decision, the November 2022 teacher evaluations suggest that E.B. exhibited marked limitations in two of the six domains—namely, acquiring and using information and attending and completing tasks. *See* (Doc. 19 at 5); *see also* 20 C.F.R. § 416.926a(a) (stating that to

7

"functionally equal the listings," a claimant's impairment(s) "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain"). One of these evaluations was authored by E.B.'s first grade teacher, Ms. Michelle Bird, while the other was jointly compiled by E.B.'s second grade teacher, Ms. Lesley Bowser, and an "exceptional student educational" specialist, Ms. Meghan Ambrosino.[5] (R. 17–33).

Ms. Bird described E.B. in her evaluation as performing below level in reading, math, and written language and as needing daily support in these areas. (R. 18). Relative to the domain of acquiring and using information, Ms. Bird noted that E.B. had a "slight problem" to a "very serious problem" in all of the listed activities, particularly with respect to reading and comprehending written material and in expressing ideas in written form. (R. 19). Ms. Bird also explained that E.B. required small group or one-on-one assistance. *Id.*

Ms. Bowser's assessment reflected similar findings. (R. 26–33). She described E.B. as performing below grade level in reading, math, and written language and his condition as necessitating daily support in each subject. (R. 26). Ms. Bowser's evaluation of E.B. in the areas relevant to acquiring and using information largely overlapped with Ms. Bird's as well. (R. 27). Ms. Bowser additionally observed that E.B. received "frequent small group and one-on-one interventions daily in the classroom to learn and comprehend material." *Id.*

---

[5] For the sake of simplicity, the Court will refer to this latter evaluation as having been prepared by Ms. Bowser.

As for the domain of attending and completing tasks, Ms. Bird deemed E.B. to have a "slight" to a "very serious problem" in all related areas. (R. 20). Ms. Bird added that E.B.'s "inability to stay focused ma[de] these tasks difficult." *Id.* Again, Ms. Bowser's assessment of this domain was consistent in many respects with that rendered by Ms. Bird. (R. 28). Ms. Bowser also commented that E.B.'s condition called for frequent adult support so that he could attend and complete tasks at school, as he was "easily distracted both by external and internal things." *Id.*

The Commissioner acknowledges that the above teacher evaluations "generally suggest [that E.B. has] marked limitations in the domains of acquiring and using information[ and] attending and completing tasks." (Doc. 20 at 8).[6] The Commissioner contends, however, that these supplemental opinions are mainly duplicative of earlier teacher questionnaires and other record evidence which the ALJ already considered. *Id.* at 9.[7]

To resolve the parties' competing positions, some additional background about the governing law is necessary. Where, as here, an ALJ is called upon to analyze the abilities of a preschool child (i.e., a child between the ages of three and six) in the domain of acquiring and using information, an ALJ must gauge how well the child:

---

[6] The Commissioner further notes that the November 2022 teacher evaluations broadly support a finding of a marked limitation in the area of interacting and relating with others. (Doc. 20 at 8). The Plaintiff, however, does not address this domain and has therefore waived any argument on the matter. *See infra* p. 13–14. And even if the Plaintiff had raised this issue, the Court finds that the Appeals Council did not err for the same reasons set forth herein.

[7] The Commissioner does not assert that the teacher evaluations are not chronologically relevant, and the Court will therefore assume that they are for purposes of its analysis.

9

> [b]egin[s] to learn and use the skills that will help [him] to read and write and do arithmetic when [he is] older. For [instance], listening to stories, rhyming words, and matching letters are skills needed for learning to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what [he] mean[s], and tell stories allows [him] to acquire and share knowledge and experience of the world around [him]. All of these are called "readiness skills," and [he] should have them by the time [he] begin[s] first grade.

20 C.F.R. § 416.926a(g)(2)(iii). Examples of diminished functioning in this domain include not being able to demonstrate an understanding of words about space, size, or time; being unable to rhyme words or the sounds in words; having difficulty in recalling important things learned in school the day before; having trouble solving math questions or computing arithmetic answers; and talking only in short, simple sentences and struggling to explain meaning. *Id.* § 416.926a(g)(3). Records from a preschool "are often a significant source of information about limitations" in this domain. Social Security Ruling (SSR) 09-3p, 2009 WL 396025, at *3 (S.S.A. Feb. 17, 2009). Indications of an impairment reflected in such preschool documents include poor grades or inconsistent academic performance; special education and related services, such as speech therapy; and accommodations made for both inside and outside the classroom, including front-row seating and additional time to take tests. *Id.* at *3.

As for the domain of attending and completing tasks, an ALJ must assess whether a preschool-aged child:

>pay[s] attention when [he is] spoken to directly, sustain[s] attention to [his] play and learning activities, and concentrate[s] on activities like putting puzzles together or completing art projects. [He] should also be able to focus long enough to do many more things by [himself], such as getting [his] clothes together and dressing [himself], feeding [himself], or putting away [his] toys. [He] should usually be able to wait [his] turn and to change [his] activity when a caregiver or teacher says it is time to do something else.

20 C.F.R. § 416.926a(h)(2)(iii). Examples of diminished functioning in this domain include being easily startled, distracted, or overreactive to sounds, sights, movements, or touch; being slow to focus on, or failing to complete, activities of interest, such as games or art projects; repeatedly becoming sidetracked from activities or frequently interrupting others; becoming easily frustrated and giving up on tasks, including ones the child is capable of completing; and requiring extra supervision to stay engaged in an activity. *Id.* § 416.926a(h)(3). Moreover, even if a child can pay attention with prompting, the "need for frequent prompting demonstrates that the child is not paying attention as appropriately, effectively, or independently as children of the same age who do not have impairments." SSR 09-4p, 2009 WL 396033, at *2 (S.S.A. Feb. 18, 2009).

In this case, as referenced previously, the ALJ found that E.B. had a less than marked limitation in the domain of acquiring and using information. (R. 77). In arriving at this determination, the ALJ noted that the Plaintiff testified E.B. performed below grade level in every subject and received special accommodations, such as extra time for work in class and at home, assistance with reading, and having work and tasks

11

being broken down for him. *Id.* The ALJ further noted that E.B.'s teachers indicated E.B. had "problems" in this domain; that he worked best in a small group and one-on-one with teachers; and that he needed support to stay on task and complete his work. *Id.* Despite these concerns, the ALJ found that E.B. was still able to pass from grade to grade at an appropriate pace and within the general education classroom with academic support. *Id.* In addition, the ALJ pointed out that formal testing showed that E.B. was of average intelligence. *Id.*

As for the domain of attending and completing tasks, the ALJ likewise considered the Plaintiff's testimony that E.B. was struggling in school, could not retain information well, had difficulty staying in his seat, and received special accommodations. *Id.* The ALJ also discussed reports by E.B.'s teachers that E.B. had "problems" in this area, such that—again—he needed to work in small groups and one-on-one with teachers and required support to stay on task and complete his work. *Id.* Moreover, the ALJ looked to clinical evaluations that described E.B. as restless, fidgety, and needing redirection, yet capable of completing testing and performing well overall. *Id.* The ALJ additionally found that E.B. responded favorably to positive reinforcement and was able to play video games and watch television, both of which necessitated sustained attention and concentration for extended periods of time. *Id.* Based on the foregoing, the ALJ concluded that E.B. had a less than marked limitation in this domain as well. *Id.*

Against this backdrop, the Plaintiff's challenge to the Appeal Council's review of the supplemental evidence fails. To start, the Plaintiff does not meaningfully

address how the November 2022 teacher evaluations are material or would alter the outcome of the ALJ's decision. *See Ingram*, 496 F.3d at 1262. Instead, the Plaintiff merely asserts in a conclusory fashion that "it is fairly clear that a finding of disability would have been made" had the ALJ adopted the more recent opinions of E.B.'s teachers. (Doc. 19 at 5). The Plaintiff also does not cite any authority that buttresses her position, nor does she identify any specific information in the record that undermines the ALJ's assessments. *Id.* As a result, the Plaintiff does not carry her burden of establishing a basis for remand. *See*, *e.g.*, *Walker v. Soc. Sec. Admin., Comm'r*, 2022 WL 1022730, at *4 (11th Cir. 2022) (per curiam) (finding that the claimant did not adequately contest the Appeals Council's evaluation of newly offered evidence by "only highlighting [the] new evidence without explaining how it was material or chronologically relevant"). In fact, there is case authority that such a perfunctory challenge constitutes a waiver on the matter. *See Grant v. Soc. Sec. Admin., Comm'r*, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (concluding that a party abandons a claim when, among other things, she "raises it in a perfunctory manner without supporting arguments and authority") (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014)); *Battle v. Comm'r, Soc. Soc. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (quoting *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (stating that a plaintiff waived an argument "because he did not elaborate on [the] claim or provide

13

citation to authority about [it]") (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995)).

Even putting aside the deficiencies with the Plaintiff's argument, it is evident from a review of the November 2022 teacher evaluations that they do not render the Commissioner's denial of benefits improper. Although these appraisals of E.B.'s abilities reflect greater concerns in some areas as compared to the prior teacher evaluations that the ALJ did consider (R. 463–513), they do not create a reasonable probability of a different outcome. By way of example, the ALJ addressed assessments compiled by E.B.'s kindergarten and first grade teachers, which also mentioned that E.B. had a "serious" or a "very serious problem" in tasks related to the domain of acquiring and using information; that E.B. received language therapy; that E.B. worked in small groups with the special education teacher; and that E.B. required extra time to finish work. (R. 463–64, 506–07). These earlier evaluations similarly noted that E.B. had a "serious" or a "very serious problem" in multiple activities related to attending and completing tasks. (R. 465, 508).

Moreover, the November 2022 evaluations identify fewer issues regarding other activities as compared to those prepared prior to the ALJ's decision. Ms. Bird, for instance, characterized E.B. as having only a slight problem in providing organized oral explanations and adequate descriptions (R. 19), while E.B.'s kindergarten teacher indicated in her earlier report that E.B. had a "serious problem" in that area (R. 464). Ms. Bowser also observed that E.B. had no difficulty sustaining attention during

14

play/sports activities (R. 28), yet E.B.'s first grade teacher found in her earlier evaluation that he had a "serious problem" doing so (R. 508).

In addition, the November 2022 assessments largely track other similar record evidence that the ALJ evaluated, including the Plaintiff's hearing testimony that E.B. was performing below grade level, could not retain information well, and needed special accommodations. (R. 77, 99–102). The ALJ considered too that E.B. was able to pass from grade to grade at an appropriate pace; that he was placed within the general education classroom with some help; and that his IQ scores indicated he was of average intelligence. R. (77). In light of this evidence, the Plaintiff's first claim of error is without merit. *See Ingram*, 496 F.3d at 1262; *Sanders v. Soc. Sec. Admin., Comm'r*, 854 F. App'x 311, 315–16 (11th Cir. 2021) (per curiam) (concluding in relevant part that records submitted to the Appeals Council would not have changed the outcome because they "consisted of duplicative findings and diagnoses: no new or material evidence"); *Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 858–59 (11th Cir. 2018) (per curiam) (explaining that an MRI report submitted to the Appeals Council was not material because the contents of the report were "similar to, and largely consistent with, other medical records" the claimant had submitted to the ALJ).[8]

---

[8] The Plaintiff does not otherwise contend that the ALJ's decision was insufficiently supported and has thus waived any such challenge. *See Stone v. Soc. Sec. Admin.*, 658 F. App'x 551, 552 n.2 (11th Cir. 2016) (per curiam) (explaining that where the claimant failed to argue the ALJ's decision was not buttressed by substantial evidence, "[t]hat argument [was] deemed abandoned") (citation omitted).

B.

Turning to the Plaintiff's second claim of error, she cursorily argues that the Appeals Council did not provide a sufficient explanation for its finding that the November 2022 teacher evaluations were not material. (R. 3); (Doc. 19 at 6). Although the Appeals Council "must consider new and material evidence submitted by a claimant and may not 'perfunctorily adhere' to an ALJ's decision," the Appeals Council need not provide a detailed rationale as to why each additional piece of evidence does not change the ALJ's decision. *Medders v. Soc. Sec. Admin., Comm'r*, 2022 WL 222719, at *2 (11th Cir. Jan. 26, 2022) (per curiam), *cert. denied sub nom. Medders v. Soc. Sec. Admin.,* 143 S. Ct. 563 (2023) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783–84 (11th Cir. 2014)). Thus, "[w]hen the Appeals Council states that it has considered a claimant's new evidence but found it would not affect the result, [a reviewing court] will not 'second-guess that assertion' absent some 'affirmative basis' for concluding that it failed to evaluate the new evidence." *Id.* (quoting *Mitchell*, 771 F.3d at 783). One example of an "affirmative basis" is where a "claimant submits new evidence 'related to an entirely new condition.'" *Id.* (quoting *Mitchell*, 771 F.3d at 783). In contrast, the Appeals Council is not obligated to offer a further explanation when a plaintiff presents additional records regarding a medical condition that the ALJ has already weighed. *Id.* (citing *Mitchell*, 771 F.3d at 783–85).

Here, the Appeals Council's concise explanation was adequate to show that it considered the November 2022 teacher evaluations, which pertained to the medical

16

conditions already before the ALJ. *Id.* The Plaintiff notably fails to cite any legal authority demonstrating otherwise.

## IV.

Based upon the foregoing, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk of Court is directed to enter Judgment in the Commissioner's favor and to close the case.

SO ORDERED in Tampa, Florida, this 20th day of March 2024.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record